1   **WO**

2

3

4

5

6            **IN THE UNITED STATES DISTRICT COURT**

7            **FOR THE DISTRICT OF ARIZONA**

8

9    Mildred Jay Holmes,                    No. CV-19-04936-PHX-SMB

10                    Plaintiff,             **ORDER**

11   v.

12   CVS Health,

13                    Defendant.

14

15          Pending before the Court is Defendant CVS Health's Motion to Dismiss and

16   Compel Arbitration. (Docs. 22, 24-25.[1]) The Court has considered the pleadings, associated

17   exhibits, and relevant law and will grant the Motion for the reasons explained below.[2]

18   **I.      BACKGROUND**

19          Plaintiff is a CVS Health employee in Phoenix, Arizona. (Doc. 1 at 3.) As part of

20   her onboarding process before officially starting with CVS, she used StarSource, a secure

21   online application portal, to electronically complete her new hire paperwork on August 19,

22   2016. (*See* Doc. 25-1 at 2-34.) Among other things, this required that she provide her e-

23   mail address, military status, banking information, and emergency contact information in

24   addition to choosing whether to opt in to an Arbitration Agreement. (*Id.*) She completed

25   the first document in StarSource at 1:22 P.M. and various other documents within the hour.

26   _____

27   [1] Plaintiff also submitted a 53-page response to Defendant's reply without requesting leave
     to do so. (Doc. 27.) This unauthorized surreply will be stricken under Local Rule of Civil
     Procedure 7.2(m)(1). *See Garcia v. Biter*, 195 F.Supp.3d 1131, 1134 (E.D. Cal. 2016)
28   (reasoning that although pro se litigants are afforded leniency, "[t]his leniency . . . does *not*
     extend to permitting surreplies as a matter of course").
     [2] Neither party requested an evidentiary hearing or oral argument for this motion.

(*Id.* at 6, 9-21.) CVS is able to view an employee's submissions through StarSource, but cannot access their login credentials or complete onboarding paperwork on their behalf. (*Id.* at 3.) One of the final onboarding documents that had to be completed was the Arbitration Agreement. (*Id.* at 29.) This was completed at 2:05 P.M. that same day and electronically signed by "Mildred Holmes." (*Id.*)

An employee who opts in to the Arbitration Agreement by electronically signing their name "agree[s] that any dispute between [the employee] and CVS that is covered by this Agreement ("Covered Claims") will be decided by a single arbitrator through final and binding arbitration only and will not be decided by a court or jury or any other forum, except as otherwise provided in this Agreement." (*Id.* at 26.) These Covered Claims are broad. (*See id.*) They include those "arising out of or related to [the employee's] employment with CVS or the termination of [their] employment" and those concerning "harassment, discrimination, retaliation, and termination arising under the Civil Rights Act of 1984[.]" (*Id.*) In addition to requiring arbitration for a wide variety of claims between CVS and its employees who opt in, it also requires that disputes concerning its "validity, enforceability or breach" be decided by the arbitrator. (*Id.*) Once in arbitration, the Arbitration Agreement generally requires each party to cover their own arbitration costs. (*Id.*) However, the arbitration initiation fee must be paid by the party bringing the claim(s) and the arbitrator can assign the prevailing party's attorney fees to the other side. (*Id.*)

Pursuant to the Arbitration Agreement signed by "Mildred Holmes" that was completed during Plaintiff's onboarding process, CVS moves to dismiss her complaint, which alleges CVS discriminated and retaliated against her on the basis of her race in violation of Title VII of the Civil Rights Act of 1964, and compel her to arbitrate her claims. (Docs. 1, 22.)

## II.    LEGAL STANDARD

Section 2 of the Federal Arbitration Act ("FAA") provides that "[a] written agreement to arbitrate 'in any maritime transaction or a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such

grounds as exist at law or in equity for the revocation of any contract." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (quoting 9 U.S.C. § 2). The FAA reflects a "congressional declaration of a liberal federal policy favoring arbitration," *id.*, and "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal and external citation omitted). Indeed, "the [FAA] 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)); *Republic of Nicar. v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991) ("Our role is strictly limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator.").

"The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron*, 207 F.3d at 1130. "If the court finds that an arbitration clause is valid and enforceable, the court should stay or dismiss the action to allow the arbitration to proceed." *Kam–Ko Bio–Pharm Trading Co. Ltd–Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 940 (9th Cir. 2009) (citing *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276-77 (9th Cir. 2006) (en banc)).

## III.  DISCUSSION

Without disputing whether the Arbitration Agreement encompasses her alleged claims, Plaintiff argues it is unenforceable because she did not sign it and its terms are unconscionable. (Doc. 24 at 1-3.) She also argues that CVS waived its right to arbitration by engaging in discovery. (*Id.*) The Court disagrees.

### A.  Plaintiff Accepted the Arbitration Agreement's Terms.

If a party has not agreed to arbitrate, the law of course does not require them to do so. *AT&T Techs., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 648-49 (1986). Arizona

common law principles govern the enforceability of arbitration agreements, just as they would for other contracts. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 581, 686 (1996); *see also Sec. Alarm Fin. Enters., L.P. v. Fuller*, 398 P.3d 578, 582 (App. 2017). Under Arizona law, a valid agreement requires an "offer, an acceptance, consideration, and sufficient specification of terms so that obligations involved can be ascertained." *K-Line Builders, Inc. v. First Fed. Sav. & Loan Ass'n*, 677 P.2d 1317, 1320 (App. 1983) (citation omitted). Acceptance occurs where there is "manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." *Id.* (citation omitted)

Here, Plaintiff challenges only whether she accepted the Arbitration Agreement because she "does not believe the signature on [it] is her own." (Doc. 24 at 1.) The Court finds this "belief" inadequate to override evidence to the contrary. Indeed, nothing shows that her signature was "secured by some fraudulent trick or device as to the context thereof [and] prevent[ed] [her] from reading the document," which would allow her to "avoid the consequences which would otherwise result from such instrument." *Ford Motor Co. v. Pearson*, 40 F.2d 858, 867 (9th Cir. 1930). Nor does any evidence show who signed the Arbitration Agreement if she did not do it. Notably, Plaintiff does not dispute that she completed the documents immediately preceding the Arbitration Agreement. (Doc. 25-1 at 6-21.) In each of these documents, she provided private information such as her e-mail address, military status, banking information, and emergency contact information. (*Id.* at 6-21.) Then, a few minutes later, the Arbitration Agreement was signed, but Plaintiff merely "believes" it was not her that did such a thing. (*Id.* at 29.) Given the evidence concerning the proximity of the previously completed documents and type of private information provided within, the Court finds nothing substantiating Plaintiff's "belief."

Accordingly, and after considering the liberal federal policy under the FAA favoring arbitration, the Court finds that the signature represents Plaintiff's acceptance of the Arbitration Agreement's terms under Arizona law. *Cf. K-Line Builders*, 677 P.2d at 1320; *Nationwide Res. Corp. v. Massabni*, 658 P.2d 210, 215 (App. 1982).

## B. **The Agreement Is Not Unconscionable.**

As a general matter, an unconscionable arbitration agreement is unenforceable. *WB, The Bldg. Co., LLC v. El Destino, LP*, 257 P.3d 1182, 1188 (App. 2011). There are two forms of unconscionability. *Clark v. Renaissance W., LLC*, 307 P.3d 77, 79 (App. 2013). "Procedural unconscionability addresses the fairness of the bargaining process, which is concerned with unfair surprise, fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should." *Id.* (internal quotation marks and citation omitted). Whereas, substantive unconscionability may result when contract terms, *inter alia*, are "so one-sided as to oppress or unfairly surprise an innocent party, [result in] an overall imbalance in the obligations and rights imposed by the bargain, [or indicate a] significant cost-price disparity." *Maxwell v. Fid. Fin. Serv., Inc.*, 907 P.2d 51, 58 (1995).

Here, Plaintiff argues that the Arbitration Agreement is unconscionable because it gives CVS "unfair advantages" by (1) "requiring Courts' determination of validity due to signature in question," (2) "stating [CVS's] 'existing internal procedures' could be used to resolve [a] complaint," and (3) "stating costs will be awarded to the prevailing party." (Doc. 24 at 2-4.) The Court disagrees.

None of Plaintiff's three arguments demonstrates that the Arbitration Agreement is unconscionable. *Shattuck v. Precision-Toyota, Inc.*, 566 P.2d 1332, 1334 (1977) ("Parties are, within reason, free to contract as they please, and to make bargains which place one party at a disadvantage." (quoting *Naify v. Pac. Indem. Co.*, 76 P.2d 663, 667 (1938)); *Smith v. Saxon*, 918 P.2d 1088, 1091 (App. 1996) ("Absent ascertainable public policy to the contrary, parties are free to contract as they wish." (citation omitted)). As an initial matter, "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S.Ct. 524, 530 (2019). Plaintiff even asks the Court to do this in her response. (Doc. 24 at 1 ("Plaintiff asks the [C]ourt to make a determination of the validity and enforceability of the Agreement.")). This does not make her Arbitration Agreement unconscionable.

Moreover, Plaintiff submits nothing showing that requiring her to use CVS's

"existing internal procedures" makes the Arbitration Agreement unconscionable either. To be sure, she submits nothing showing these procedures are more expensive or burdensome than arbitration or litigating in federal court. *See Clark*, 307 P.3d at 79 ("An arbitration agreement may be substantively unconscionable if the fees and costs to arbitrate are so excessive as to 'deny a potential litigant the opportunity to vindicate his or her rights.'" (citation omitted)). Without anything showing these CVS's internal procedures have railroaded Plaintiff's ability to bring her claims, the Court fails to find this argument persuasive. *Id.* If anything, these procedures appear to offer a more convenient and affordable remedy for Plaintiff to quickly resolve her claims, even well before arbitration and certainly without any judicial intervention.

Lastly, the Arbitration Agreement's mere authorization for an arbitrator to assign the prevailing party's litigation costs to the other side is not unconscionable. *Cf. Rizzio v. Surpass Senior Living LLC*, 459 P.3d 1201, 1206-7 (App. 2020) (finding cost-shifting provision in arbitration agreement that allocated all costs, fees, and expenses to the plaintiff even if she prevailed "unusual, one-sided, and operates as a prospective penalty for any resident seeking to bring a meritorious claim"). Plaintiff's mere speculation that she will lose in arbitration and the arbitrator will award costs to CVS does not make her Arbitration Agreement unconscionable. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000) (holding that the mere possibility of excessive costs during future arbitration did not preclude vindication of parties' rights).

Especially given how Plaintiff did not have to opt in to the Arbitration Agreement, alongside the fact that she provides no evidence supporting any of her arguments, the Court finds nothing supporting unconscionability. *See Gullett on behalf of Estate of Gullett v. Kindred Nursing Centers W., L.L.C.*, 390 P.3d 378, 386 (App. 2017) (holding permissible an arbitration agreement that did not permit either party to opt out of arbitration).

### C. CVS Did Not Waive Its Right to Compel Arbitration by Participating in Discovery.

Waiving the right to arbitration under the FAA requires a showing of "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing

right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Richards v. Ernst & Young, LLP*, 744 F.3d 1072, 1074 (9th Cir. 2013) (citation omitted). Relying on non-binding case law and no evidence, Plaintiff argues that CVS took acts inconsistent with arbitration by engaging in discovery. (Doc. 24 at 2 (citing *Davis v. Cont'l Airlines, Inc*., 59 Cal. App. 4th 205, (1997)). Not only does Plaintiff provide no binding legal basis to support her argument, but this situation is quite unlike the one in *Davis* where the defendants collected over 1,600 pages of discovery and conducted a two-day deposition. *Id.* at 208. In fact, CVS has not yet answered the complaint and even moved to compel arbitration before it was served. Accordingly, the Court finds that these circumstances fail to indicate CVS waived its right to compel arbitration.

### D.  Plaintiff's Alleged Claims Are Subject to Arbitration.

Because the Arbitration Agreement is enforceable and CVS did not waive its right to compel arbitration, the Court must determine whether it encompasses Plaintiff's alleged claims. *Chiron*, 207 F.3d at 1130. Not only does Plaintiff fail to challenge whether her claims are covered, but the Arbitration Agreement also includes two relevant clauses confirming they must be arbitrated. (*See* Doc. 25-1 at 26-27.) It explicitly includes claims "arising out of or related to [Plaintiff's] employment with CVS or the termination of [her] employment," and notes exemplar claims such as "harassment, discrimination, retaliation, and termination arising under the Civil Rights Act of 1984." (*Id.* at 26.) The Court finds that these clauses unmistakably commit Plaintiff's Title VII claims to binding arbitration and will respect each party's contractual decision to arbitrate. Because all of the claims in this action must be arbitrated, this case will be dismissed rather than stayed. *Mayne Pharma (USA) Inc.*, 560 F.3d at 940.

### IV.    CONCLUSION

Plaintiff's Arbitration Agreement, which encompasses all of her alleged claims, is enforceable under Arizona law. CVS also has not waived its right to compel arbitration under the Arbitration Agreement. As a result, the Court will dismiss Plaintiff's complaint and compel her to arbitrate her claims under the FAA.

1    Accordingly,

2

3    **IT IS ORDERED GRANTING** Defendant CVS Health's Motion to Dismiss and

4    Compel Arbitration, (Doc. 22). Plaintiff's complaint is dismissed as she must arbitrate her

5    claims according to the Arbitration Agreement;

6    **IT IS FURTHER ORDERED STRIKING** Plaintiff's Response to Defendant's

7    Reply Brief in Support of Arbitration, (Doc. 27);

8    **IT IS LAST ORDERED DIRECTING** the Clerk of Court to enter judgment in

9    favor of Defendant and terminate this case.

10

11    Dated this 30th day of July, 2020.

12

13

14

15    Honorable Susan M. Brnovich
      United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28